SAMUEL B. WALKER and others *vs.* A. M. CROSBY and others.

December 20, 1887.

**Contract for Payment of Judgment—Performance—Satisfaction.—** The facts in this action, as found by the trial court, examined, and *held* not to warrant its conclusions of law. The judgment of said court vacated and set aside, and the case remanded, with instructions to cause judgment to be entered for plaintiffs in accordance with the views herein expressed.

Appeal by plaintiffs from a judgment of the district court for Nobles county, where the action was tried by *Perkins*, J., without a jury.

*Daniel Rohrer*, for appellants.

*Geo. W. Wilson, P. E. Brown*, and *L. S. Nelson*, for respondents.

COLLINS, J.   Action to satisfy and discharge of record two judgments,—one for $402.97, the other for $150.59,—entered and docketed in the clerk's office for Nobles county, Minnesota, on the 10th day of January, 1885, in favor of defendant Crosby, and against plaintiff Harris, and to restrain and enjoin the collection thereof by the defendants, Crosby, his alleged assignee, Mellick, and Miller, the sheriff of said county.   Upon the findings of the trial court, judgment was entered in defendants' favor, from which plaintiffs appeal.

The sole question is, are the conclusions of law, as determined by said court, justified by its findings of fact? and for that reason these facts must be stated at length.

For some years prior to the time said judgments were entered and docketed, the plaintiff Harris owned 160 acres of land in said county, upon which he resided with his family, and which he had, in the year 1880, mortgaged to the American Freehold Mortgage Company.   About April 1, 1885, said Harris, wishing to pay the amount of said mortgage, said judgments, and certain taxes then due and delinquent upon his said land, applied to plaintiff Day and defendant Thompson, then copartners in the banking business, for a loan upon his said land sufficient to liquidate and satisfy said claims.   These parties then had in their possession money to loan belonging to plaintiff Walker, and the court finds that "it was thereupon agreed by and between said Thompson, Harris, and Crosby, among other things, that the said Day & Thompson should make or negotiate a loan to said Harris on the said premises sufficient in amount to pay off and satisfy the amount due on said mortgage,   *   *   *   to free said land from taxes thereon for the years 1883 and 1884, to pay said judgment for $402.97, in favor of said Crosby and against Harris, and the expenses of making said loan," in all $1,315.   It is further found as a fact, that "it was also agreed that no part of the amount of said loan should be paid directly to said Harris, but the same should be applied by the said Day & Thompson to pay and satisfy said mortgage, judgment, taxes, and expenses."   The judgment for $402.97 was held by Crosby to indemnify and protect him from loss

by reason of his liability to the firm of D. M. Osborne & Co. upon a judgment for over $900, in their favor, and against said Thompson and said Crosby, but which was in fact the debt of Thompson only. So these two persons, Crosby and Thompson, agreed—again using the words of the trial court—"that, upon Thompson paying the amount due on said judgment for $402.97 upon the judgment recovered by D. M. Osborne & Co.,  *  *  *  against said Thompson and Crosby aforesaid, and having the same applied in part-payment thereof, that the said Crosby would satisfy and discharge said $402.97 judgment of record." There was also an agreement between the debtor and creditor about the securing of the smaller judgment; but as the court finds it was not consummated, no further mention need be made of it.

In pursuance of the agreement between Harris, Crosby, and Thompson as to the loan, the former, with his wife, duly executed, acknowledged, and delivered to Walker a mortgage upon his said land to secure the payment of the sum of $1,200, which was duly recorded April 22, 1885. This sum being insufficient to cancel these various liens, Mr. and Mrs. Harris executed, acknowledged, and delivered to said Day another mortgage upon said premises for the sum of $135. Thereupon the mortgage to the Freehold Company was settled, the delinquent taxes and expenses paid, and to Thompson then was paid an amount sufficient to liquidate the judgment in question. Although the findings are silent upon the point, it is safe to presume that the money was disbursed by Day & Thompson, as had been stipulated when the loan was negotiated. Thereafter Thompson refused to account to Crosby for the money secured by him, and refused to apply it, or any part of it, to the partial payment of the Osborne judgment. The judgment against Harris remains unsatisfied of record. It has been assigned by the judgment creditor to the defendant Mellick, who has caused an execution thereon to be issued and delivered to the defendant sheriff, who has levied upon and offered for sale the land before mentioned. Hence this action.

Several questions have been discussed by counsel, which we think need not be commented upon in disposing of the case. The vital one to be considered is the legal effect of the agreement between Crosby,

the judgment creditor, Harris, his debtor, and Thompson, a member of the firm which was to lend or negotiate a loan of money sufficient for the desired purposes. This agreement has three prominent features: *First,* that the parties agreed that Harris should mortgage his land for sufficient to pay off the incumbrances and liens, including the judgment; *second,* that Harris should not receive, handle, or disburse the funds; and, *third,* that Day & Thompson, the bankers, should see that the several creditors were duly paid. To this Harris and Crosby consented, and it is wholly immaterial in determining the rights of the former to discuss the differences which may have arisen between the other parties to the compact. What was required of him? Was he to see that Day & Thompson paid Crosby, or did his liability as a participator in the agreement end when he delivered a properly executed mortgage to Day & Thompson? We think there can be but one answer to the interrogatory. His duty to Crosby ceased when he placed the mortgage in the hands of the bankers. When he did all that was exacted of him by the terms of the agreement under which it was made, assented to by those specially interested in the payment of the judgment, he could do no more. He had been deprived of the right of personally distributing the funds among his creditors, and to others selected by and satisfactory to Crosby had been delegated the authority to pay over the money in his stead. He ought not and cannot be held responsible for the delinquencies of those designated by Crosby to make the payments.

Again, it will be seen that Thompson and Crosby made another contract, — of which Harris was undoubtedly ignorant, — that the former was to apply the amount received in settlement of this judgment in partial discharge of the Osborne debt. To do this, Thompson must first receive the same from Day & Thompson, and this he was permitted and authorized to do by Crosby, when the latter stipulated that Thompson (not the firm of which he was a member) should remit the money to Osborne & Co. If anything more is needed to indicate that Harris's obligation ended as before stated, it may be found in the fact that the money provided by Harris by mortgaging his home, designed by him to meet the judgment, left in the bank at Crosby's request for proper application, has, by the latter's acquies-

cence, gone out of the possession of Day & Thompson, and is beyond their control as a firm. It seems hardly necessary to add that, Harris having provided for the payment of the judgment in the manner directed by his creditor, the plaintiffs are entitled to have it discharged and satisfied of record.

The judgment appealed from is vacated and set aside, and the case remanded, with instructions to cause judgment to be entered for plaintiffs in accordance with the views herein expressed.